

| | THE CITY OF NEW YORK | |
|---|---|---|
| ZACHARY W. CARTER<br>*Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | Nicholas R. Ciappetta<br>Administrative Law Division<br>(212) 356-2215<br>Facsimile: (212) 356-2019<br>nciappet@law.nyc.gov |

September 15, 2016

**BY ECF**
Honorable Nina Gershon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>Austria Bueno v. The City of New York</u>, 16 CV 1749 (NG)(RML)

Dear Judge Gershon:

   I am an attorney in the office of Zachary W. Carter, Corporation Counsel of the City of New York, and attorney for Defendant City of New York in the above referenced action. Defendant submits this letter to request a pre-motion conference in anticipation of filing a motion to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

   Plaintiff filed a Complaint with this Court on or about April 12, 2016, seeking monetary damages and prospective relief as a consequence of an *ex parte* closing order sought and obtained by the City of New York in December 2015 against Apartment 4D located at 41-06 12th Street, Queens, New York ("subject apartment"), which allegedly rendered her family temporarily homeless. The temporary closing order was part of an underlying nuisance abatement action that was commenced because of illegal activity observed by members of the New York City Police Department inside of the subject apartment in early 2015. The Complaint argued that the *ex parte* order was improperly issued because the illegal activity that served as the predicate for the nuisance abatement action was not committed by Plaintiff or anyone in her family. It further alleged that "if Plaintiff had been able to appear in the State court and provide such information to the judge, the court would never have signed an order sealing her apartment." Complaint at ¶ 60. Accordingly, the Complaint alleged that Ms. Bueno's procedural due process rights were violated and sought a declaration that the City of New York's "pattern and practice" of obtaining *ex parte* residential closing orders violates the Due Process Clause of the United States Constitution. On July 4, 2016, after Defendant had requested permission for a pre-motion conference in anticipation of filing a motion to dismiss, Plaintiff filed a First Amended Complaint ("FAC") containing four causes of action and requesting

declarations that the City's *ex parte* practices violate the United States Constitution, Federal law, and City law, and that the City has failed to train its police officers and other municipal officers.

Plaintiff's first cause of action alleges that her procedural due process rights were violated because she did not have the opportunity to appear in court to argue against the issuance of the *ex parte* closing order. At the outset, it is important to note that due process *does not* always require a pre-deprivation hearing. See Nnebe v. Daus, 644 F.3d 147, 158 (2d Cir. 2011). Rather, due process is a flexible concept and the procedural protections that must be provided depend heavily upon the circumstances. See Matthews v. Eldridge, 424 U.S. 319, 334 (1976); see also Brody v. Village of Port Chester, 434 F.3d 121, 134 (2d Cir. 2005). Relevant to this case, the existence of a public nuisance may obviate the need for pre-deprivation notice and a hearing. See Brancato v. City of New York, 244 F. Supp. 2d 239, 246 (S.D.N.Y. 2003); see also Wyss v. City of Hoquiam, 111 Fed. Appx. 449, 450 (9th Cir. 2004).

Plaintiff was not entitled to any additional process to protect her property interest in the subject apartment. First, a temporary closing order requires the City of New York to demonstrate by "clear and convincing evidence that a public nuisance … is being conducted, maintained or permitted and that the public health, safety or welfare immediately requires" an order temporarily closing the building, erection or place, or part thereof, where the public nuisance is being conducted, maintained or permitted. New York City Administrative Code ("Administrative Code") Section 7-709(a). Thus, a justice of the New York State Supreme Court must independently evaluate the papers submitted by the City of New York in support of its motion for a temporary closing order. In this case, Justice Orin R. Kitzes found that the City's submission met the statutory standard. Indeed, it cannot be disputed that the subject apartment constituted a public nuisance under Administrative Code Section 7-703(g) as there were three controlled substance offenses within one year of the December 2015 filing of the nuisance abatement action. This independent review by Justice Kitzes afforded Plaintiff some process and some protection prior to the issuance of the temporary closing order. See United States v. 141st Street Corp., 911 F.2d 870, 875 (2d Cir. 1990).[1] Second, the duration of the deprivation is temporary in nature as Administrative Code Section 7-709(a) requires that a hearing for the preliminary injunction be held no later than three business days from the granting of the temporary closing order.[2] Finally, and perhaps most importantly, the prompt nature of the preliminary injunction hearing (which can be a full evidentiary hearing where witnesses are examined and cross-examined and evidence is presented) provides a robust opportunity to

---

[1] The independent review and decision by Justice Kitzes constitutes an additional barrier to Plaintiff's ability to recover damages for any alleged violation of her due process rights. Section 1983 claims are constitutional torts subject to common-law tort principles. See Wray v. City of New York, 490 F.3d 189, 193 (2d Cir. 2007). As such, a plaintiff asserting a Section 1983 claim must establish causation. See Soto v. City of New York, 132 F. Supp. 3d 424, 443 (E.D.N.Y. 2015). In this case, the causal link is broken by the intervening exercise of independent judgment by Justice Kitzes, and, as such, the City's filing of the nuisance abatement action cannot be deemed to be the proximate cause of any injury to Plaintiff.

[2] United States v. James Daniel Good Real Prop., 510 U.S. 43 (1993), is distinguishable because a seizure of real property constitutes a qualitatively different type of deprivation than a three-day closing order. A seizure of property essentially extinguishes all ownership interests during its pendency and gives the government extraordinary power over the use of the property.

address any alleged error in the granting of the temporary closing order. See 141st Street Corp., 911 F.2d at 876; Trobough v. City of Martinsburg, 1997 U.S. App. LEXIS 19742, at *8 (4th Cir. 1997); see also Desi's Pizza, Inc. v. City of Wilkes-Barre, 2006 U.S. Dist. LEXIS 59610, at *57-58 (M.D. Pa. Aug. 23, 2006).

Plaintiff's Second Cause of Action is for failure to train and/or supervise. Rather than asserting an independent cause of action, Plaintiff seems to be trying to establish municipal liability. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (stating that "Monell does not provide a separate cause of action for the failure by the government to train its employees…."). "Establishing municipal liability on a failure-to-train theory requires a plaintiff to meet a particularly high standard." Kennedy v. City of New York, 2015 U.S. Dist. LEXIS 144386, at *24 (S.D.N.Y. Oct. 23, 2015). The FAC falls far short of this heavy burden. Plaintiff has not identified a particular training program or demonstrated a deficiency in that program. See id. at *25-26. Nor are there any facts in the FAC showing that Plaintiff's injury was caused by a deficiency in a training program. Lastly, Plaintiff does not make attempt to plead the three requirements set forth in Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992).[3]

Plaintiff's Third Cause of Action, for a violation of the Fair Housing Act ("FHA"), is the equivalent of trying to fit a square peg in a round hole. The purpose of the FHA is to remedy the historical impact of discrimination that denied housing opportunities to minorities and resulted in residential segregation. See Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., __ U.S. __, 135 S. Ct. 2507, 2515-16 (2015). In this context, it is clear that Plaintiff's claim simply has nothing to do with the purpose of the FHA. Plaintiff alleges that the City's practice of seeking *ex parte* closing orders produces a disparate impact upon people of color. See TAC ¶ 155. The City's discretion in commencing nuisance abatement actions, however, does not amount to a "housing policy." Rather, the nuisance abatement statute applies to both commercial and residential property and is designed to address conduct that interferes with quality of life. See Administrative Code § 7-701. Moreover, the subject of a nuisance abatement action is the place where illegal activity occurs, and not solely the people responsible for the illegal conduct. As such, an injunction can remain in place after the occupants who caused the criminal activity have vacated the premises.[4]

---

[3] Nor can Plaintiff advance beyond the pleading stage based on a failure to supervise theory because the FAC is devoid of facts showing that the need for better supervision was obvious. Instead, the FAC rests on a single letter sent in April 2015 to Zachary W. Carter, Corporation Counsel of the City of New York.

Plaintiff also appears to allege Monell liability based on several allegedly widespread and persistent customs and practices. See FAC ¶¶ 132-134. The facts in the FAC, however, demonstrate neither that these alleged "customs and practices" are widespread nor that they are persistent. Plaintiff relies on data regarding *ex parte* closing orders sought in just two of the five boroughs, and the statistics cover only a three month period at the beginning of 2016. See id. ¶¶ 89-90.

[4] Since Plaintiff's first three causes of action fail, this court should decline to exercise supplemental jurisdiction over her New York City Human Rights Law ("CHRL") claim. See Morrishow v. Weill Med. Sch. of Cornell Univ., 2013 U.S. Dist. LEXIS 79809, at *17 (S.D.N.Y. June 17, 2013) (declining to exercise supplemental jurisdiction because the CHRL requires application of a standard with which New York State Courts are more familiar), adopted by, 2013 U.S. Dist. LEXIS 85597 (S.D.N.Y. June 17, 2013).

    To the extent that the Plaintiff is still seeking a declaratory judgment that the manner in which the City obtains *ex parte* residential closing orders is unconstitutional or violates Federal or State law, it must be dismissed for lack of standing. Plaintiff does not allege a sufficient likelihood that she will be injured in the future in a similar way. "To obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, inter alia, 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" Marcavage v. The City of New York, 689 F.3d 98, 103 (2d Cir. 2012) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)) (emphasis in original). The FAC contains no such allegations. Indeed, the possibility of a similar injury is wildly speculative and conjectural. To establish standing, Plaintiff would have to show that if she moves from the subject apartment and if the new apartment that she moves into was previously the focal point of illegal activity, the City of New York would commence a nuisance abatement action and seek an *ex parte* temporary closing order against the new apartment even if she was not involved in the illegal activity. This is simply implausible.[5]

    For the reasons stated above, Defendant requests a pre-motion conference to discuss this potential motion. Thank you in advance for your consideration of this matter.

Respectfully submitted,

Nicholas Ciappetta (NC 1014)

cc: Robert Sanderman, Esq.
   **QUEENS LEGAL SERVICES**
   89-00 Sutphin Boulevard, 5th Floor
   Jamaica, New York 11435
   (via ECF)

---

[5] If Plaintiff is no longer seeking prospective relief, and only wants a recovery of damages, then Defendant asks that the Plaintiff make an initial demand so that the parties can explore the possibility of settlement. Indeed, the City is willing to attend a settlement conference before Magistrate Judge Robert M. Levy or meet with a mediator.